David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANTRADT LLC, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.  17-cv-6548 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| SILVER SPRING NETWORKS, INC., SCOTT A. LANG, MICHAEL BELL, DR. LAURA D. TYSON, WARREN M. WEISS, THOMAS R. KUHN, RICHARD A. SIMONSON, JONATHON SCHWARTZ, THOMAS H. WERNER, and PETER VAN CAMP, | 1.  **VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants. | |

Plaintiff Kantradt LLC ("Plaintiff"), by and through its undersigned attorneys, brings this stockholder class action on behalf of itself and all others similarly situated public stockholders of Silver Spring Networks, Inc. ("Silver Spring" or the "Company") against Silver Spring, Scott A. Lang, Michael Bell, Dr. Laura D. Tyson, Warren M. Weiss, Thomas R. Kuhn, Richard A. Simonson, Jonathon Schwartz, Thomas H. Werner, and Peter Van Camp, the members of the Silver Spring's

board of directors (collectively referred to as the "Board" or the "Individual Defendants," and, together with Silver Spring, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger B Silver Spring and Itron, Inc. ("Itron").  Plaintiff alleges the following based upon personal knowledge as to itself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading proxy statement (the "Proxy Statement") to be filed with the SEC and disseminated to Silver Spring shareholders.  The Proxy Statement recommends that Silver Spring shareholders vote in favor of a merger whereby Itron, by way of a merger with Ivory Merger Sub, Inc., a direct, wholly-owned subsidiary of Itron ("Merger Sub"), in an all-cash transaction, will acquire Silver Spring, with Silver Spring surviving as a wholly-owned subsidiary of Itron (the "Proposed Transaction").  Pursuant to the terms of the agreement and plan of merger the companies entered into (the "Merger Agreement"), Itron will acquire each issued and outstanding share of Silver Spring stock that it currently does not own.

2.      Pursuant to the terms of the Merger Agreement, Silver Spring common stockholders will receive $16.25 in cash in exchange for each share of Silver Spring common stock they hold prior to the effective time of the merger (the "Merger Consideration").  The Proposed Transaction is valued at approximately $830 million.

3.      As discussed below, the Merger Consideration appears inadequate, and the process by which Defendants consummated the Proposed Transaction is fundamentally unfair to Plaintiff and the other common shareholders of Silver Spring.  Indeed, the Merger Consideration amounts to a mere *5.5% premium* over Silver Spring's highest closing price over the 52-week period ending September 15, 2017.

4.      Defendants have now asked Silver Spring's shareholders to support the Proposed

CLASS ACTION COMPLAINT

Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     Specifically, the Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections for Silver Spring; (ii) the financial analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore"), in support of their fairness opinion; and (iii) the actual Merger Consideration.

6.     The special meeting of Silver Spring shareholders to vote on the Proposed Transaction is approaching.  It is imperative that the material information omitted from the Registration Statement is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

7.     For these reasons as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Silver Spring's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## **PARTIES**

8.     Plaintiffs is, and at all relevant times has been, a shareholder of Silver Spring.

9.     Defendant Silver Spring is a Delaware corporation and maintains its principal executive offices at 230 West Tasman Drive, Redwood City, CA 94063.  Silver Spring's common stock is listed and traded on the NYSE under the ticker symbol "SSNI."

10.     Individual Defendant Scott A. Lang ("Lang") is, and has been since 2015, a director of Silver Spring and currently serves as the Chairman of the Board.

11.     Individual Defendant Michael Bell ("Bell") is, and has been since 2015, a director of Silver Spring and currently serves as the President and the Chief Executive Officer ("CEO") of the Company.

12.     Individual Defendant Dr. Laura D. Tyson ("Tyson") is, and has been since 2009, a director of Silver Spring.

CLASS ACTION COMPLAINT

13.     Individual Defendant Warren M. Weiss ("Weiss") is, and has been since 2015, a director of Silver Spring.

14.     Individual Defendant Thomas R. Kuhn ("Kuhn") is, and has been since 2005, a director of Silver Spring.

15.     Individual Defendant Richard A. Simonson ("Simonson") is, and has been since 2009, a director of Silver Spring.

16.     Individual Defendant Jonathon Schwartz ("Schwartz") is, and has been since 2011, a director of Silver Spring.

17.     Individual Defendant Thomas H. Werner ("Werner") is, and has been since 2009, a director of Silver Spring.

18.     Individual Defendant Peter Van Camp ("Van Camp") is, and has been since 2017, a director of Silver Spring.

19.     The parties in paragraphs 10 through 18 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Silver Spring the "Defendants."

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Silver Spring maintains its principal place of business in this District and each of

CLASS ACTION COMPLAINT

the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

**I.      The Proposed Transaction Undervalues Silver Spring and is the Result of a Severely Flawed Process.**

23.     Silver Spring renders smart grid network and security technology solutions. The Company supplies hardware, software, and services that connect devices on the grid that deploys metering, demand response, distribution automation, and distributed generation. Silver Spring Networks enables utilities and customers to monitor energy delivery and consumption in the United States.

24.     The Merger Consideration Silver Spring shareholders stand to receive if the Proposed Transaction is consummated fails to adequately compensate them for their shares.  In fact, 2 separate analyses conducted by Evercore—the *Premiums Paid Analysis* and the *Analyst Price Targets Analysis*—valued the Company at higher prices than the Merger Consideration.

25.     With respect to the *Premiums Paid Analysis*, the analysis demonstrates an Implied per Share value up to $19.50, which illustrates that each share of Silver Spring stock has an inherent premium of ***approximately 120%*** over the Merger Consideration.

26.     Similarly, the *Analyst Price Targets Analysis*, the analysis demonstrates an Implied per Share value up to $19.00, which illustrates that each share of Silver Spring stock has an inherent premium of ***approximately 117%*** over the Merger Consideration.

27.     On September 18, 2017, Silver Spring and Itron issued a joint press release announcing the Proposed Transaction, which states in relevant part:

CLASS ACTION COMPLAINT

**Itron to Acquire Silver Spring Networks to Accelerate Smart Grid and Smart City Innovation and Growth**

*Advances strategy to provide value-added services and outcomes-based solutions*

*Enhances capabilities that increase efficiency for utilities, smart cities and enterprises*

*Accretive to non-GAAP EPS and adjusted EBITDA in 2019*

*Itron to host webcast today at 8:30 a.m. EDT to discuss the transaction*

LIBERTY LAKE, Wash. and SAN JOSE, Calif. — Sept. 18, 2017 — Itron, Inc. (NASDAQ: ITRI) and Silver Spring Networks, Inc. (NYSE: SSNI) today announced that they have signed a definitive agreement for Itron to acquire all outstanding shares of Silver Spring for $16.25 per share in cash.   The transaction is valued at approximately $830 million, net of $118 million of Silver Spring's cash.   This represents a premium of 25 percent to Silver Spring's closing share price on Sept. 15, 2017, the last trading day prior to the announcement of the transaction.   The transaction has been unanimously approved by the boards of directors of both companies.

Headquartered in San Jose, California, Silver Spring provides Internet of Important Things™ connectivity platforms and solutions to utilities and cities. In 2016, Silver Spring generated revenues of $311 million with a gross margin of 44 percent and ended the year with $1.2 billion of backlog.  With its global footprint in the smart utility and smart city sectors, Silver Spring generated more than 20 percent of its revenues through its primarily recurring managed services and SaaS solutions, an area of strategic focus for Itron.  To date, Silver Spring has delivered more than 26.7 million network-enabled devices across five continents.

Itron anticipates approximately $50 million in annualized cost synergies to be substantially realized within three years of completing the transaction by optimizing combined operations and expenses.  The acquisition is expected to have a positive impact on Itron's long-term growth rate, be accretive to gross margin in the first year after completing the transaction and be accretive to non-GAAP EPS and adjusted EBITDA in the second year, excluding one-time, transaction-related costs and including stock-based compensation costs that Silver Spring currently excludes from its reported non-GAAP results.

"The addition of Silver Spring brings more capabilities to our offerings and advances our strategy of delivering highly secure, value-generating solutions for the critical infrastructure within utilities, smart cities and the broader industrial IoT sector," said Philip Mezey, Itron's president and chief executive

6

CLASS ACTION COMPLAINT

officer.  "By converging our complementary, standards-based technologies, we will enhance customer efficiencies with solutions that optimize devices, network technologies, outcomes and analytics.  This enables us to increase investment in new solutions and accelerate innovation for our combined customer base, covering more than 200 million people.

"This transaction also increases our presence in the sizable industrial IoT segment, driving higher growth with recurring revenues and enabling Itron to increase profitability beyond our mid-teens EBITDA margin target," continued Mezey.  "Combining Silver Spring's entrepreneurial culture and proven capabilities with Itron's operational strengths, depth of solutions and customer intimacy will result in a company that is well-positioned in the fast growing critical infrastructure space.  We look forward to welcoming Silver Spring's talented team of engineers and professionals to Itron and are confident that together, we are best equipped to provide industry-leading solutions that will deliver greater value to our customers."

Mike Bell, president and chief executive officer of Silver Spring Networks, said, "Joining forces with Itron will enable us to help more utilities and cities adopt the industrial Internet, improve their performance and reliability, and better position themselves for a connected future.  This strong combination will address end-to-end solutions for our customers and will create immediate value for our stockholders; it will also provide new opportunities for our employees as part of a larger, global technology leader for the Internet of Important Things."

**Compelling strategic and financial benefits**
- **More value for customers:** Itron envisions it will converge the best of both companies' complementary technologies to provide streamlined solutions on standards-based platforms, allowing the combined company to optimize industrial networks and deliver more solutions that increase value for customers.
- **Large partner ecosystem:** Itron values an open platform approach to industry partners and is committed to supporting multi-vendor offerings for the smart utility and smart city sectors.
- **Enhances value-added services:** With more than 90 million smart endpoints globally from the combined customer bases, Itron will be able to offer customers more outcome-based solutions, creating a large recurring revenue opportunity in the high-growth software and services segment.
- **Accelerates innovation:** The combined company's strong engineering talent, technology and deep data domain expertise will drive greater innovation and support for customers.
- **Significant synergies:** Itron anticipates approximately $50 million of annualized cost synergies within three years of completing the transaction by optimizing combined operating expenses.  The transaction also will create additional revenue synergy potential.

CLASS ACTION COMPLAINT

- **Accretive transaction:** The acquisition is expected to have a positive impact on Itron's long-term growth rate, be accretive to gross margin in the first year and be accretive to non-GAAP EPS and adjusted EBITDA margin in year two, excluding one-time, transaction-related costs.

Itron plans to finance the transaction using a combination of cash and approximately $750 million in incremental new debt.  Fully committed financing has been provided by Wells Fargo.

The transaction is expected to close in late 2017 or early 2018 and is subject to customary closing conditions, including regulatory approval and the approval of Silver Spring's stockholders.

Centerview Partners and Credit Suisse are acting as financial advisors to Itron, and Jones Day is acting as its legal advisor.  Evercore is acting as financial advisor and Fenwick & West LLP as legal advisor to Silver Spring.

**Company Webcast**

Itron will host a webcast today, Sept. 18, 2017 at 8:30 a.m. EDT to discuss this transaction.  The webcast and presentation materials will be made available 10 minutes before the start of the call and will be accessible on Itron's website at http://investors.itron.com/events.cfm.  A replay of the audio webcast will be made available at http://investors.itron.com/events.cfm.  A telephone replay of the conference call will be available through Sept. 29, 2017.  To access the telephone replay, dial (888) 203-1112 (Domestic) or (719) 457-0820 (International) and enter passcode 5228925.

**About Itron**

Itron is a world-leading technology and services company dedicated to the resourceful use of energy and water.  We provide comprehensive solutions that measure, manage and analyze energy and water.  Our broad product portfolio includes electricity, gas, water and thermal energy measurement devices and control technology; communications systems; software; as well as managed and consulting services.  With thousands of employees supporting nearly 8,000 customers in more than 100 countries, Itron applies knowledge and technology to better manage energy and water resources.  Together, we can create a more resourceful world.  Join us: www.itron.com.

Itron® and OpenWay® are registered trademarks of Itron, Inc.  All third-party trademarks are property of their respective owners and any usage herein does not suggest or imply any relationship between Itron and the third party unless expressly stated.

**About Silver Spring Networks**

Silver Spring Networks enables the Internet of Important Things™ by reliably and securely connecting things that matter.  Cities, utilities, and companies on

CLASS ACTION COMPLAINT

five continents use the company's cost-effective, high-performance IoT network and data platform to operate more efficiently, get greener, and enable innovative services that can improve the lives of millions of people.  With more than 26.7 million devices delivered, Silver Spring provides a proven standards-based platform safeguarded with military grade security.  Silver Spring Networks' customers include Baltimore Gas & Electric, CitiPower & Powercor, ComEd, Consolidated Edison, CPS Energy, Florida Power & Light, Pacific Gas & Electric, Pepco Holdings, and Singapore Power.  Silver Spring has also deployed networks in Smart Cities including Copenhagen, Glasgow, Paris, Providence, and Stockholm.  To learn more, visit www.ssni.com.[1]

28.     The Merger Consideration offered to Silver Spring shareholders in the Proposed Transaction unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the amount offered for those securities in the proposed acquisition given the Company's prospects for future growth and earnings.  The Proposed Transaction will deny Class Members their right to fully share equitably in the true value of the Company.

## II.     The Merger Agreement's Deal Protection Provisions Deter Superior Offers

29.     In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Silver Spring.

30.     First, pursuant to the Merger Agreement, Silver Spring has agreed to immediately cease (and to cause its subsidiaries to immediately cease) any and all existing discussions, negotiations and solicitations with any person or entity prior to September 17, 2017 with respect to any acquisition proposal, to revoke data room access to such persons or entities, and to request the prompt return or destruction of all non-public Silver Spring information furnished to any such person in connection therewith.  *See* Proxy Statement 88.

31.     Second, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Silver Spring shareholders.  Specifically, the Merger Agreement generally states that the Company and the Individual Defendants shall not: (i) solicit, initiate, seek, knowingly encourage, knowingly

---

[1] Silver Spring Networks, Inc., Current Report (Form 8-K), at Exhibit 99.1 (Joint Press Release dated September 18, 2017) (September 18, 2017).

CLASS ACTION COMPLAINT

facilitate or knowingly induce the making, submission or announcement of any inquiry, expression of interest, proposal or offer that constitutes or that would reasonably be expected to lead to an acquisition proposal; (ii) participate in any discussions or negotiations with any person regarding any Silver Spring acquisition proposal; (iii) agree to, accept, approve, adopt, endorse or recommend (or propose or announce any intention or desire to do any of the foregoing) any acquisition proposal, or propose or announce any intention to do so; (iv) enter into any letter of intent, term sheet, agreement in principle, memorandum of understanding or similar document or agreement or any other contract contemplating or otherwise relating to, or that would reasonably be expected to lead to, any acquisition proposal; or (v) submit any acquisition proposal to the vote of the Silver Spring stockholders.  *See* Proxy Statement 88.

32.     Furthermore, the Company and the Individual Defendants must provide to Itron: (i) written notice of the identity of such person or entity making such acquisition proposal and of Silver Spring's intention to participate or engage in discussions or negotiations with, or furnish non-public information to, such person or entity, and (ii) a copy of such acquisition proposal.  *See* Proxy Statement 89.

33.     Additionally, the Merger Agreement grants Itron recurring and unlimited matching rights, which provides it with four business days to negotiate with Silver Spring, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.  *See* Proxy Statement 89.

34.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Itron can easily foreclose a competing bid.  As a result, these provisions unreasonably favor Itron, to the detriment of Silver Spring's public shareholders.

35.     The Merger Agreement also provides that Silver Spring must pay Itron a termination fee of $32.3 million in cash under certain conditions, including in the event Silver Spring elects to

10

CLASS ACTION COMPLAINT

terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Silver Spring shareholders with a superior offer.

**III.    The Proxy Statement is Materially Incomplete and Misleading.**

36.    On November 11, 2017, Silver Spring filed the preliminary Schedule 14A Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Projections Prepared by Silver Spring Management*

37.    The Proxy Statement provides several non-GAAP financial metrics, including Non-GAAP Gross Profit, Non-GAAP Operating Income, Adjusted EBITDA, Non-GAAP Net Income, and Unlevered Free Cash Flows, for Silver Spring, but fails to provide the line item projections detailed below for the metrics used to calculate these non-GAAP measures.

38.    First, the Proxy Statement defines Non-GAAP Gross Profit as "the difference between Billings and cost of Billings."  However, the Proxy Statement fails to provide values for the cost of Billings.  *See* Proxy Statement 57.

39.    Second, the Proxy Statement defines Non-GAAP Operating Income as "operating income adjusted for Billings and cost of non-GAAP revenue and excludes expenses related to the amortization of intangible assets, stock-based compensation, acquisition-related."  However, the Proxy Statement fails to provide values: (i) amortization of intangible assets; (ii) stock-based compensation; and (iii) acquisition-related.

CLASS ACTION COMPLAINT

40.     Third, the Proxy Statement defines Adjusted EBITDA as "net income adjusted for changes in deferred revenue and deferred cost of revenue, other (income) expense, net, (benefit) provision for income taxes, depreciation and amortization, stock-based compensation, acquisition-related charges, restructuring, legal settlements and certain other items management believes affect the comparability of operating results." But the Proxy Statement fails to provide values for: (i) net income; (ii) deferred revenue and deferred cost of revenue; (iii) (income) expense; (iv) depreciation and amortization; (v) stock-based compensation; and (vi) acquisition-related charges, restructuring, legal settlements and certain other items.

41.     Fourth, the Proxy Statement defines Non-GAAP Net Income as "net income adjusted for changes in deferred revenue and deferred cost of revenue, and excludes expenses related to the amortization of intangible assets, stock-based compensation, acquisition-related charges, income tax benefit related to acquisitions, restructuring and legal settlements." However, as mentioned above, the Proxy Statement fails to provide values for: (i) net income; and (ii) deferred revenue and deferred cost of revenue

42.     Failure to provide complete and full disclosure of the line item projections for the metrics used (e.g., interest, income taxes, capital expenditures) to calculate the above-mentioned non-GAAP metrics leaves Silver Spring shareholders without the necessary, material information to reach a full-informed decision concerning the Company, the fairness of the Merger Consideration, and, ultimately, whether to vote in favor of the Proposed Transaction. In fact, not only has Silver Spring previously provided its shareholders with the above-mentioned information, but the Company's disclosure of such information has illustrated that there is a substantial difference between the GAAP and non-GAAP financial metrics. For example, the below are from Silver Spring's second quarter 2017 press release:

CLASS ACTION COMPLAINT

**SILVER SPRING NETWORKS, INC.**
**UNAUDITED CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOW**
**(in thousands)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2017 | 2016 | 2017 | 2016 |
| **OPERATING ACTIVITIES** | | | | |
| Net income (loss) | $ 18,626 | $ 26,121 | $ (4,545) | $ 7,607 |
| Adjustments to reconcile net income (loss) | | | | |
| to net cash provided by operating activities: | | | | |
| Deferred taxes | 9 | 111 | (16) | 111 |
| Depreciation and amortization | 2,232 | 2,104 | 4,477 | 4,236 |
| Stock-based compensation | 7,032 | 7,041 | 13,689 | 13,941 |
| Other non-cash adjustments | 106 | 53 | 187 | 113 |
| Changes in assets and liabilities: | | | | |
| Accounts receivable | (3,419) | (3,117) | (6,979) | 859 |
| Inventory | 234 | 1,591 | 2,752 | 2,061 |
| Prepaid expenses and other assets | (3,162) | (264) | (3,642) | 1,944 |
| Landlord incentives related to lease | — | 2,275 | 883 | 2,275 |
| Deferred cost of revenue | 159,618 | 17,040 | 151,617 | 8,236 |
| Accounts payable | 825 | 561 | 4,220 | 1,174 |
| Customer deposits | 68 | (1) | 132 | (6) |
| Deferred revenue | (183,036) | (50,042) | (165,364) | (29,988) |
| Accrued and other liabilities | 3,875 | 329 | 7,122 | (5,031) |
| **Net cash provided by operating activities** | **3,008** | **3,802** | **4,533** | **7,532** |
| **INVESTING ACTIVITIES** | | | | |
| Proceeds from sales of available-for-sale investments | 2,549 | 18,111 | 2,549 | 22,944 |
| Proceeds from maturities of available-for-sale investments | 4,200 | 1,250 | 5,200 | 2,250 |
| Purchases of available-for-sale investments | (6,212) | (7,515) | (6,712) | (10,954) |
| Purchases of property and equipment | (673) | (12,759) | (1,750) | (17,244) |
| **Net cash used for investing activities** | **(136)** | **(913)** | **(713)** | **(3,004)** |
| **FINANCING ACTIVITIES** | | | | |
| Payments on capital lease obligations | — | (141) | — | (285) |
| Proceeds from issuance of common stock | 265 | 340 | 2,811 | 2,228 |
| Taxes paid related to net share settlement of equity awards | (1,402) | (3,286) | (5,948) | (3,620) |
| **Net cash used for financing activities** | **(1,137)** | **(3,087)** | **(3,137)** | **(1,677)** |
| Effect of exchange rate changes on cash and cash equivalents | 123 | (234) | 67 | (136) |
| Net increase (decrease) in cash and cash equivalents | 1,858 | (432) | 750 | 2,715 |
| Cash and cash equivalents - beginning of period | 49,275 | 68,411 | 50,383 | 65,264 |
| Cash and cash equivalents - end of period | $ 51,133 | $ 67,979 | $ 51,133 | $ 67,979 |

**SILVER SPRING NETWORKS, INC.**
**UNAUDITED RECONCILIATION OF GAAP TO NON-GAAP MEASURES (QUARTERLY)**
**(in thousands)**

| | Three Months Ended June 30, 2017 | | | | | |
|---|---|---|---|---|---|---|
| | Cost of Revenue | Change in Deferred Cost of Revenue (a) | Stock-based Compensation | Amortization of Intangible Assets | Acquisition-Related Costs | Cost of Billings |
| **Cost of Revenue / Cost of Billings:** | | | | | | |
| Product | $ 186,491 | $ (159,588) | $ (461) | $ (80) | $ - | $ 26,362 |
| Services | | | | | | |
| Managed services and SaaS | 9,619 | - | (668) | - | - | 8,951 |
| Professional services | 8,924 | - | (792) | - | 1 | 8,133 |
| Total services | 18,543 | - | (1,460) | - | 1 | 17,084 |
| **Total Cost of Revenue / Cost of Billings** | **205,034** | **(159,588)** | **(1,921)** | **(80)** | **1** | **43,446** |

| | Operating Expenses | Stock-based Compensation | Amortization of Intangible Assets | Restructuring & Litigation | Acquisition-Related Costs | Non-GAAP Operating Expenses |
|---|---|---|---|---|---|---|
| **Operating Expenses / Non-GAAP Operating Expenses:** | | | | | | |
| Research and development | $ 17,272 | $ (2,134) | $ - | $ - | $ 1 | $ 15,139 |
| Sales and marketing | 8,893 | (657) | (104) | - | (2) | 8,130 |
| General and administrative | 10,881 | (2,320) | (8) | - | - | 8,553 |
| Restructuring | 1,207 | - | - | (1,207) | - | - |
| **Total Operating Expenses / Non-GAAP Operating Expenses** | **$ 38,253** | **$ (5,111)** | **$ (112)** | **$ (1,207)** | **$ (1)** | **$ 31,822** |

13

CLASS ACTION COMPLAINT

43.     Omission of the above-referenced projections renders the financial projections included on pages 56 through 57 of the Proxy Statement materially incomplete and misleading.  If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

44.     Furthermore, complete disclosure of the above-mentioned information omitted from the financial projections is particularly important for Silver Spring shareholders in light of the fact that shareholders are being asked to vote on a transaction, which has been unanimously endorsed by the Board, that, if consummated, will cause Silver Spring shareholders to be cashed out of the Company and deny them their right to fully share equitably in the true value of the Company.

***Evercore's Valuation Analyses and Fairness Opinion***

45.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the following key components used in their analysis: (i) the estimated terminal value of Silver Spring as of December 31, 2021 under either the perpetuity growth mythology or the terminal value methodology; (ii) the inputs and assumptions underlying the calculation of the perpetuity growth rate range of 3.0% to 5.0% used for Silver Spring; (iii) the inputs and assumptions underlying the calculation of the discount rate range of 11.5% to 15.5% used for Silver Spring; (iv) Silver Spring's net cash (calculated as cash and cash equivalents less debt) as of June 30, 2017; and (v) the inputs and assumptions underlying the calculation of the multiple range of 8.0x to 14.0x used for Silver Spring.  *See* Proxy Statement 48-50.

46.     These key inputs are material to Silver Spring shareholders, and their omission renders the summary of Evercore's *Discounted Cash Flow Analysis* materially incomplete and misleading.  Indeed, as a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness

CLASS ACTION COMPLAINT

opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> **There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars**…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. **This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

47.     With respect to Evercore's *Illustrative Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose the inputs and assumptions underlying the calculation of the discount rate of 13.5%.  *See* Proxy Statement 50.

48.     With respect to Evercore's *Peer Group Trading Multiples Analysis* and *Premiums Paid Analysis*, the Proxy Statement fails to disclose the individual multiples Evercore calculated for each company and transaction utilized.  The omission of these multiples renders the summary of these analyses and the implied equity value reference ranges materially misleading.  A fair summary of *Peer Group Trading Multiples Analysis* and *Premiums Paid Analysis* requires the disclosure of the individual multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as Silver Spring shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

CLASS ACTION COMPLAINT

49.     Finally, with respect to Evercore's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose the number, identities, and respective price targets for each of the research analysts Evercore evaluated when conducting its analysis.

50.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Silver Spring common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

52.     This action is properly maintainable as a class action for the following reasons:

(a)   the Class is so numerous that joinder of all members is impracticable.  As of August 31, 2017, Silver Spring had approximately 53.98 million shares outstanding;

(b)   the holders of these shares are believed to be geographically dispersed through the United States;

(c)   there are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

i.   whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder

16

CLASS ACTION COMPLAINT

ii.   whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.   whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated.

(d)   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(e)   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(f)   the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(g)   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

53.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.   Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that registration statement communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in

17

CLASS ACTION COMPLAINT

order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

55.    Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Silver Spring; (ii) the financial analyses performed by the Company's financial advisor, Evercore, in support of their fairness opinion; and (iii) the actual Merger Consideration.

56.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to Silver Spring shareholders although they could have done so without extraordinary effort.

57.    Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.  Indeed, the Proxy Statement states that Defendants were privy to and had knowledge of the financial projections for both companies and the details surrounding discussions with other interested parties and Evercore.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the bankers' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy Statement and review it

CLASS ACTION COMPLAINT

carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of the Company's financial projections.

59.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Silver Spring within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Silver Spring, and participation in and/or awareness of the Silver Spring's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Silver Spring, including the content and

19

CLASS ACTION COMPLAINT

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Silver Spring, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

64.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

67.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of

CLASS ACTION COMPLAINT

this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and its counsel as Class Counsel;

B.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.      Rescinding, to the extent already implemented, the Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

Plaintiff demands a TRIAL BY JURY on all issues so triable.


DATED:  November 10, 2017

**OF COUNSEL**                                        Respectfully submitted,
**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde                              */s/ David E. Bower*
The Empire State Building                      David E. Bower SBN 119546
350 Fifth Avenue, Suite 4405               **MONTEVERDE & ASSOCIATES PC**
New York, New York 10118                 600 Corporate Pointe, Suite 1170
Tel: 212-971-1341                               Culver City, CA 90230
Fax:  212-202-7880                              Tel: (310) 446-6652
Email: jmonteverde@monteverdelaw.com    Fax: (212) 202-7880
*Counsel for Plaintiff*                          Email:  dbower@monteverdelaw.com
                                                        *Counsel for Plaintiff*

21

CLASS ACTION COMPLAINT